[Civ. No. 30939.   Second Dist., Div. One.   Feb. 28, 1967.]

MILTON GOLDSTEIN, Plaintiff and Appellant, v. HER-
BERT ENOCH, Defendant and Respondent.

Milton Goldstein, in pro. per., for Plaintiff and Appellant.

Nathan Goller for Defendant and Respondent.

FOURT, J.—Milton Goldstein appeals from an order of the superior court dismissing his action against Herbert Enoch after Enoch's general demurrer to the complaint was sustained without leave to amend.[1]

---

[1] The court's order of dismissal shows only that the action was dismissed under the provisions of section 581, subd. 3 of the Code of Civil Procedure. However, this court has, upon its own motion, obtained the superior court file in this action and the minute order of October 1, 1965, entered therein reveals that this action was taken upon the representation of Goldstein, that no further facts could be added if leave to amend were given.

The first cause of action discloses that Goldstein is an attorney who owned, at all times herein relevant, 20 percent of the stock of R.R.R. Inc., a California corporation. Enoch owned the remaining 80 percent. On or about March 8, 1964, Enoch proposed to Goldstein that he might be able to sell all the stock for a price which would return Goldstein $100,000 for his share, but in order to do so he would need a false financial statement. Enoch suggested that Goldstein prepare such a statement and sign it as a certified public accountant which Goldstein refused to do.

On or about April 8, 1964, Enoch called and negotiated with Goldstein for the purchase of Goldstein's interest. Enoch said he was then anticipating the sale of the R.R.R. Inc. stock to a prospective buyer on the basis of a false financial statement prepared and certified by another at his request and for this purpose. When Goldstein advised Enoch that for ethical reasons he could not be a party to a transaction which might jeopardize his professional career, Enoch proposed to purchase his stock. This time Enoch stated that the proposed sale price was $450,000 and Goldstein's share would be $90,000, but that on account of Goldstein's refusal to participate in the sale, Enoch felt he should be satisfied with less. Ultimately Goldstein agreed to and did sell his interest to Enoch for $39,350 and agreed to assume 20 percent of any income tax Enoch might be forced to pay as a result of the acquisition of the stock.

All allegations constituting the first cause of action except the paragraph alleging the measure of damages are incorporated by reference in the second cause of action. Goldstein asserts that he was induced to part with his R.R.R. Inc. stock at an inequitable price as a proximate result, alternatively, of (1) duress and menace exerted by Enoch which entitles him to recover the difference between the sales price and the then fair market value of the stock, or (2) Enoch's intentional misrepresentation of the price he would obtain on resale for which Goldstein prays to recover 20 percent of the difference between the amount Enoch falsely represented as the total consideration and the amount actually received by him.

Goldstein contends that the complaint states at least one valid cause of action, or that he should be granted leave to amend it so to do. He declined to amend, however, because he could aver no additional facts and those upon which Goldstein relies are set forth with sufficient clarity for us to determine that no cause of action is or could be stated.

A pleading of facts entitling the plaintiff to some relief is all that is necessary as against a general demurrer (*De Zemplen* v. *Home Federal Sav. & Loan Assn.*, 221 Cal. App.2d 197, 200 [34 Cal.Rptr. 334]; *Schaefer* v. *Berinstein*, 140 Cal.App.2d 278, 288 [295 P.2d 113]), and in viewing Goldstein's complaint we are bound to accept as true all of its factual allegations pleaded in proper form. (*Stigall* v. *City of Taft*, 58 Cal.2d 565, 567-568 [27 Cal.Rptr. 441, 375 P.2d 289].) Inconsistent causes of action may prevail even in a verified pleading so long as the factual allegations are not antagonistic to one another, but in any event specific factual allegations control the more general allegations in each cause of action (*Steiner* v. *Rowley*, 35 Cal.2d 713 [221 P.2d 9]; *Faulkner* v. *California Toll Bridge Authority*, 40 Cal.2d 317, 328 [253 P.2d 659]). We observe particularly that Goldstein's complaint is verified under oath and since the first paragraph of the second cause of action incorporates specifically all the factual allegations from the first cause of action, we are compelled to the conclusion that the circumstances do not justify recovery.

The first cause of action depends on "duress and menace" but construed in the light most favorable to Goldstein the facts fail to support these conclusionary averments. Neither wrongful confinement of the person nor detention of property as specified in Civil Code section 1569 are literally required to constitute duress today (*Shasta Water Co.* v. *Croke*, 128 Cal.App.2d 760 [276 P.2d 88]) and the threat of injury to Goldstein's character might constitute menace under Civil Code section 1570. (*Miratti* v. *Banca Popolare Fugazi*, 99 Cal.App.1 [277 P. 905].) However, duress and menace arise by virtue of unlawful action, and menace requires that an unlawful threat which is more than some statement or act from which the guilty party becomes apprehensive of prosecution be made by the defendant. (*Miller* v. *Walden*, 53 Cal.App.2d 353 [127 P.2d 952].) An action for duress and menace may not be based upon a simple request made by the defendant of the guilty party to so act as to avoid the consequences of his prior conduct. (*Lyon* v. *Lyon*, 70 Cal.App. 607 [233 P. 988].) A fortiori, an action for duress and menace cannot be sustained when the voluntary action of the apprehensive party is induced by his speculation upon or anticipation of a future event suggested to him by the defendant but not threatened to induce his conduct. The issue in each instance is whether the defendant intentionally

exerted an unlawful pressure on the injured party to deprive him of contractual volition and induce him to act to his own detriment. (*Lewis* v. *Fahn,* 113 Cal.App.2d 95 [247 P.2d 831]; *Sistrom* v. *Anderson,* 51 Cal.App.2d 213 [124 P.2d 372].)

Goldstein was not induced to participate in a fraudulent scheme by unlawful pressure executed by Enoch; he merely acted in avoidance when Enoch disclosed the plan to him. Goldstein was not compelled either to prepare a false financial statement or to part with his stock to Enoch. If his sale was prompted by advance information Enoch disclosed to him, it nonetheless took place as a voluntary bargain and sale negotiation; Goldstein was at all times able to protect himself. The circumstances alleged would not be considered a threat by the average reasonable man and we are not free to indulge individual fantasy or self-induced apprehension, even when the deplorable conduct of an associate generates the condition.

■ As the gravamen of his second cause of action for fraud and deceit, Goldstein claims a proportionate share of Enoch's ill-gotten gain on the sale of the securities in excess of the price represented to Goldstein. Goldstein, however, not only fails to allege facts which would entitle him to recovery for fraudulent misrepresentation, but refutes his erstwhile innocence by requesting judicial support for his participation in the illicit proceeds.

Goldstein cannot prevail because he alleges the specific circumstances under which the negotiation for the sale of his shares took place. He contends that he was induced to part with his interest solely as a means of avoiding any implication in a transaction tainted by fraud, and this we must accept.

■ The elements of an action for fraudulent misrepresentation include the following: (1) the misrepresentation of a material fact (2) which is false and known to be false by the party so misrepresenting (3) made with the intention to induce reliance in another and (4) actual and justifiable reliance by the other party (5) who was induced to act by belief in its truth and (6) thus suffered damage. (*Zinn* v. *Ex-Cell-O Corp.,* 148 Cal.App.2d 56 [306 P.2d 1017]; *Roseman* v. *Canovan,* 43 Cal. 110; *Mercer* v. *Elliott,* 208 Cal.App.2d 275, 278 [25 Cal.Rptr. 217].) The absence of any one of these elements is generally fatal to recovery. (*Maxon-Nowlin Co.* v. *Norswing,* 166 Cal. 509 [137 P. 240].) ■ Actionable fraud is that only which would, as in the case of duress or menace,

impair the contractee's freedom of consent (*Podlasky* v. *Price,* 87 Cal.App.2d 151 [196 P.2d 608]) and while the false representation need not have been the sole cause of inducing the contract, it must have been of such nature, weight and force that without it the contract of sale would not have been made. (*Craig* v. *Shea,* 45 Cal.App. 351 [188 P.73].)

Unless Goldstein integrated the sale of his interest in R.R.R. Inc. with the subsequent transaction in which it was allegedly resold for a fraudulently inflated consideration we cannot conceive that the price on resale was a material factor in his decision.

█ If we nonetheless assume the materiality of the allegedly false representation and Goldstein's reliance thereupon, we are compelled to conclude that Goldstein is precluded from recovery because he falls *in pari delicto* with Enoch.

"A contract made in consideration of a prior illegal one or in compromise of a dispute arising from it is also illegal and unenforceable. . . ." (12 Cal.Jur.2d, Contracts, § 105, p. 305; *Union Collection Co.* v. *Buckman,* 150 Cal. 159 [88 P. 708, 119 Am.St.Rep. 164, 11 Ann.Cas. 609, 9 L.R.A. N.S. 568].) The case falls within the purview of *Wise* v. *Radis,* 74 Cal.App. 765 [242 P. 90], where plaintiff sought his proportionate share of an illegal broker's commission and the court observed at pages 775-776: "[The plaintiff's] argument is substantially this: The contract which he and [defendant] made with the owner of the property was fully executed on the part of the latter, who paid [defendant] the agreed commission notwithstanding the illegality of the transaction; where an illegal contract or an illegal transaction has been fully executed and one of the parties has the avails thereof, all the harm that can be done to public policy has been done, and therefore, so [plaintiff] argues, the party who has the avails can be compelled to pay them, or a proportionate share thereof, to the other party.

"We are unable to agree with [plaintiff's] reasoning. No principle of law is better settled than that a party to an illegal contract or an illegal transaction cannot come into a court of law and ask it to carry out the illegal contract or to enforce rights arising out of the illegal transaction. He cannot set up a case in which he necessarily must disclose the illegal contract or the illegal transaction as the basis of his claim. . . ." A similar principle is bound to govern where the plaintiff who contends innocence discloses the fact that the

transaction upon which he relies for recovery involves a violation of the law and he would, in effect, become a participant by his recovery. The courts will not lend assistance to persons whose claim for relief rests on an illegal transaction. (*Huber* v. *Peek-A-Boot, Inc.*, 189 Cal.App.2d 512, 516 [11 Cal.Rptr. 467].) Where a fraud has been not only contemplated but was actually and successfully perpetrated, one who participated in the benefits must generally remain content with his lot. (*Mitchell* v. *Cline*, 84 Cal. 409, 416 [24 P. 164].)

The order is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied March 23, 1967.