Filed 6/25/21  Axline v. Reimund CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| GREGORY P. AXLINE, | |
| Plaintiff and Respondent, | C087826 |
| v. | (Super. Ct. No. 34-2013-00148003-CU-OR-GDS) |
| HEATHER REIMUND, | |
| Defendant and Appellant. | |

When Gregory Axline offered to purchase real property from Heather Reimund, Reimund submitted a counter offer that would give her a nonexclusive easement over the land, informing Axline that she needed the easement because her adjacent property would otherwise be landlocked, a representation that was not true.  Axline agreed.  A later amendment to the purchase agreement gave Reimund an exclusive easement.

Axline subsequently sued Reimund for intentional misrepresentation, negligent misrepresentation, fraudulent inducement, rescission, surcharge of easement, and nuisance.  After a bench trial, the trial court found, among other things, that Reimund fraudulently induced Axline to agree to the easement.  The trial court partially rescinded

1

the purchase contract to remove the easement and awarded $1,488 in damages to Axline. Reimund appeals from the judgment.

On appeal, Axline asserts as a threshold matter that (1) Reimund does not have standing to appeal because she has since sold the adjacent property. For her part, Reimund contends the trial court erred in concluding that (2) the contract did not include an easement provision, (3) Axline was fraudulently induced to agree to the easement, and (4) partial rescission was an appropriate remedy.

We conclude (1) Reimund has standing to appeal, (2) the trial court did not find that the contract did not include an easement provision, (3) Reimund does not establish trial court error regarding the finding of fraud in the inducement, and (4) partial rescission was not a proper remedy. In reaching these conclusions we have not relied on Axline's responses to requests for admission and hence do not discuss Axline's objections to them.

We will reverse the portions of the judgment pertaining to the partial rescission and remand the matter for the trial court to fashion a proper remedy for Reimund's fraud. We will affirm the judgment in all other respects.

BACKGROUND

Reimund owned real property identified as parcel numbers 42, 46 and 47 in Rio Linda, California. The northern boundary of parcel number 46 abuts Elkhorn Boulevard. The eastern boundary of parcel numbers 42 and 47, which are south of parcel number 46, abut 20th Street. The northern portion of parcel number 47 was adjacent to and immediately south of parcel number 46. We will refer to the northern portion of parcel number 47 as the adjacent lot. The adjacent lot was later divided into a separate parcel, identified as parcel number 59.

Reimund listed parcel number 46 (hereafter the property) for sale for $350,000 in February 2012. At that time, Reimund intended to reserve an exclusive easement over a

2

private driveway on the eastern boundary of the property to give her access from Elkhorn Boulevard to the adjacent lot. No such easement had been recorded previously.

Axline submitted an offer to purchase the property for $325,000. The offer did not mention a reserved easement.

Reimund submitted a counteroffer to Axline incorporating a document titled Addendum No. One, which contained five items. Of relevance, item five stated, "Buyer is made aware that Seller is reserving an easement for ingress & egress over the Eastern most portion of this parcel running North & South, approximately 210 feet long by 32 feet wide, per existing fence lines, pending engineer parcel map & legal description to be given to buyer prior to close of escrow. The purpose of this easement is for the seller to gain access to the adjacent parcel that has no road access. This easement will be reserved on the Grant Deed to the Buyer."

Axline, his wife and real estate agent and Reimund and her real estate agent met on February 27, 2012. Axline found out about the counteroffer and Addendum No. One at the meeting.

Reimund stated during the meeting that she needed an easement to access the adjacent lot because the adjacent lot would be landlocked otherwise. In fact, however, the adjacent lot had access to 20th Street through a driveway on parcel number 42 and Reimund did not disclose that information to Axline. Reimund testified that although she knew it was incorrect to represent that there was no road access to the adjacent lot, she nevertheless signed the addendum.

According to Reimund, there was discussion about an exclusive easement during the February 27, 2012 meeting. But Axline, his agent and Reimund's agent contradicted that testimony. Axline, his agent and Reimund's agent also contradicted Reimund's testimony about a discussion that a second addendum would be signed because Addendum No. One contained errors or should have stated that the easement was exclusive.

3

Axline agreed to an easement because he thought Reimund needed it and he did not see any harm in allowing her to cross the easement area to access the adjacent lot. He signed the counteroffer and Addendum No. One on February 27, 2012. He would not have agreed to any easement had he known there was access to the adjacent lot from 20th Street.

Reimund subsequently prepared a document titled Addendum No. Two. That addendum stated, "Buyer is made aware that Seller is reserving an exclusive easement for ingress, egress, utilities & maintenance through the Eastern most portion of this parcel running North & South, approximately 210 feet long by 32 feet wide, per existing fence lines (pending engineer parcel map & legal description) to be given to buyer prior to close of escrow. The purpose of this easement is for the seller to gain access to the adjacent parcel from Elkhorn Blvd. This easement will be reserved on the Grant Deed to the Buyer and for future generations."

Axline testified there was no discussion about an exclusive easement before he signed Addendum No. Two. He still thought he and Reimund could use the easement area. Nevertheless, Axline and Reimund signed Addendum No. Two, and the grant deed from Reimund to Axline reserved an exclusive easement on the eastern edge of the property.

About a year after the sale, Reimund built a fence that blocked Axline from accessing the easement area. Axline sued Reimund for intentional misrepresentation, negligent misrepresentation, fraudulent inducement, rescission, surcharge of easement, and nuisance.

Following a bench trial, the trial court found that the parties formed a contract when Axline accepted the counteroffer incorporating Addendum No. One, agreeing to give Reimund a nonexclusive easement. The trial court further found that Reimund falsely represented that there was no road access to the adjacent lot, she knew the representation was false, she made the representation to induce Axline to agree to the

4

easement, Axline reasonably relied on Reimund's representation, and the misrepresentation masked the significance of Reimund's subsequent modification of the easement in Addendum No. Two. The trial court also found that the parties did not define or discuss the term "exclusive" in Addendum No. Two and they did not negotiate a change in the purchase price despite the potential negative ramifications of an exclusive easement on the nature, use and value of the property. The trial court rescinded the easement provisions in Addendum Nos. One and Two and awarded Axline $1,488 in damages based on testimony about the real property taxes he had paid.

The judgment terminated the easement in favor of Reimund and her successors in interest in its entirety, amended the grant deed from Reimund to Axline accordingly, and permitted Axline to record the judgment in the Sacramento County Recorder's Office to effectuate the termination of the easement.

DISCUSSION

I

As a threshold matter, Axline contends Reimund does not have standing to appeal the judgment because Reimund no longer owns the adjacent lot.

At the time of trial, Reimund had sold the adjacent lot and parcel number 42, which gave the adjacent lot access to 20th Street. Axline argues Reimund has no standing to appeal the judgment because she does not have any ownership interest in any property that would be affected by the disputed easement.

Only a party aggrieved by a judgment or order has standing to appeal the judgment or order. (Code Civ. Proc., § 902; *Bridgeman v. Allen* (2013) 219 Cal.App.4th 288, 292 (*Bridgeman*) ["To have standing to appeal, a person generally must be a party of record and be sufficiently aggrieved by the judgment or order."].) A party is aggrieved when his or her "rights or interests are injuriously affected by the judgment." (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737.) The interests injuriously affected by the judgment " ' "must be immediate, pecuniary, and substantial and not nominal or a remote

5

consequence of the judgment." ' " (*Ibid.*) Whether a party has standing is a question of law. (*Bridgeman,* at p. 292.)

Reimund was a party of record in the action. Her interests are injuriously affected by the judgment because the trial court found she committed fraud and awarded damages in favor of Axline and against her. Accordingly, we conclude that Reimund was a party aggrieved by the judgment and has standing to appeal it. (*Rubio Canon Land & Water Assn. v. Everett* (1908) 154 Cal. 29, 30-31 [holding, in an action where the plaintiff sought to establish its right to maintain and use a water pipe through defendant's land and recover damages for injury to that right, that the defendant had standing to appeal from a money judgment against him even though he had parted with his interest in the land and relinquished his interest in the pipe at the time of the appeal]; *Serrano v. Stefan Merli Plastering Co., Inc.* (2008) 162 Cal.App.4th 1014, 1027 [holding that appellants ordered to pay certain fees were aggrieved parties].)

## II

Reimund argues the trial court erred in finding that the purchase agreement did not include an easement provision. In support of her argument, Reimund quotes from portions of the trial court's statement of decision. We do not agree with Reimund's characterization of the trial court's findings, but in any event, as Reimund acknowledges, we independently review the matter.

In the statement of decision, the trial court stated: "The Court finds that the parties formed a contract upon the [residential purchase agreement] on February 27, 2012." The trial court's finding is correct. Axline and Reimund signed the counter offer on February 27, 2012. The counter offer expressly incorporated Addendum No. One, which Axline and Reimund also signed that same day.

The trial court added: "The Court finds that the parties then executed an addendum to the [residential purchase agreement], modifying the [residential purchase

6

agreement's] terms." We understand the sentence to refer to Addendum No. Two, which Axline and Reimund subsequently signed.

Based on our review of the statement of decision, and contrary to Reimund's argument, the trial court never said the purchase agreement did not include an easement provision. In any event, having independently reviewed the matter, it is clear that the purchase agreement included a nonexclusive easement provision.

We also independently conclude the trial court was correct in ruling that Addendum No. Two was not supported by valuable consideration. Because Addendum No. Two purported to grant Reimund a materially stronger easement, it required consideration to support it. (*Anderson v. Adler* (1919) 42 Cal.App. 776, 779; see also *Post v. Palpar, Inc.* (1960) 184 Cal.App.2d 676, 680 (*Post*); *Realty Corp. of America, Inc. v. Burton* (1958) 162 Cal.App.2d 44, 55.) Good consideration for a promise is "[a]ny benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he [or she] is at the time of consent lawfully bound to suffer, as an inducement to the promisor." (Civ. Code, § 1605.) Although she acknowledged the easement would make the adjacent lot more valuable for future development, Reimund said Axline did not pay a reduced price in consideration for the easement. And Axline testified he did not receive anything in exchange for the exclusive easement in Addendum No. Two. Addendum No. Two did not modify the parties' February 27, 2012 contract because there was no consideration supporting it.

### III

Reimund next argues the trial court erred in concluding that Axline was fraudulently induced to agree to the nonexclusive easement.

The consent of the parties to a contract must be free. (Civ. Code, § 1565.) An apparent consent is not free when obtained by fraud. (Civ. Code, § 1567.) Consent is

7

deemed to have been obtained by fraud only when it would not have been given had the fraud not existed.  (Civ. Code, § 1568.)

The elements of an action for fraudulent misrepresentation are (1) the misrepresentation of a material fact (2) which is false and known to be false by the defendant or without sufficient knowledge to warrant a belief that it was true (3) made with intent to induce the plaintiff to act in reliance thereon and (4) actual and justifiable reliance by the plaintiff (5) who was induced to act by belief in its truth and (6) thus suffered damage.  (*Alliance Mortgage Co. v. Rothwell* (1995) 10 Cal.4th 1226, 1239 (*Alliance Mortgage Co.*); *Goldstein v. Enoch* (1967) 248 Cal.App.2d 891, 895; *Nathanson v. Murphy* (1955) 132 Cal.App.2d 363, 367; see Civ. Code, § 1572.)  Reliance exists when the misrepresentation was an immediate cause of the plaintiff's conduct, which altered his or her legal relations and when, absent the misrepresentation, he or she would not, in all reasonable probability, have entered into the contract.  (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 976; *Alliance Mortgage Co.,* at p. 1239.)  Reliance must be reasonable, i.e., "(1) the matter [asserted] was material in the sense that a reasonable person would find it important in determining how he or she would act [citation]; and (2) it was reasonable for the plaintiff to have relied on the misrepresentation."  (*Hoffman v. 162 North Wolfe LLC* (2014) 228 Cal.App.4th 1178, 1194.)

Actual fraud is a question of fact.  (Civ. Code, § 1574; see *Radinsky v. T. W. Thomas, Inc.* (1968) 264 Cal.App.2d 75, 80.)  On appeal, we view the evidence and draw inferences therefrom in a manner most favorable to the prevailing party, reject all contrary and contradictory evidence and uphold the trial court's findings if sustained by any substantial evidence.  (*Nestle v. Santa Monica* (1972) 6 Cal.3d 920, 925-926; *Pearson v. Norton* (1964) 230 Cal.App.2d 1, 7.)  We will not reverse a judgment merely because a trier of fact could have drawn different inferences from the evidence or because

8

we might have drawn conclusions other than those drawn by the trier of fact. (*Pearson,* at p. 7.)

Applying the above principles of appellate review, we conclude substantial evidence supports the trial court's finding that Axline's consent to the easement provision in Addendum No. One was obtained by fraud. There was no dispute that at the February 27, 2012 meeting, Reimund said she needed an easement to access the adjacent lot because that lot would be landlocked without the easement. Addendum No. One reflected that representation by stating that the adjacent lot had no road access. The representation that there was no road access to the adjacent lot other than through an easement over the property Axline was purchasing was knowingly false when made because Reimund knew the adjacent lot had access to 20th Street through another parcel Reimund also owned. That Reimund intended to induce Axline to rely on her misrepresentation can be inferred from her conduct. (*Jarvis v. Singleton* (1933) 129 Cal.App. 250, 253.) She made the misrepresentation and then presented Axline with Addendum No. One. The misrepresented fact was material inasmuch as Axline would not have granted any easement had he known there was road access to the adjacent lot. Axline reasonably relied on Reimund's representation and consented to an easement. The easement gave Reimund a right to use an approximately 210 feet by 32 feet area of Axline's property and obligated Axline not to interfere with uses authorized by the easement. (*Zissler v. Saville* (2018) 29 Cal.App.5th 630, 638; *Main Street Plaza v. Cartwright & Main, LLC* (2011) 194 Cal.App.4th 1044, 1053; see *Switzler v. Robert A. Klein & Co.* (1928) 94 Cal.App. 410, 415.) A plaintiff need not prove pecuniary loss, so long as the record indicates there was an injury or prejudice resulting from the fraud. (*Hefferan v. Freebairn* (1950) 34 Cal.2d 715, 721.)

Reimund nevertheless cites section 159 of the Restatement Second of Contracts for the proposition that to constitute fraud, a misrepresentation must concern the quantity, quality, or value of the property. The cited authority states that a misrepresentation is an

9

assertion not in accord with the facts, and offers examples of misrepresentations, but it does not support Reimund's claim that only misrepresentations regarding the quantity, quality, or value of the property are actionable. (Rest.2d Contracts, § 159; see *Farina v. Bevilacqua* (1961) 192 Cal.App.2d 681.)

Reimund further argues that Axline did not suffer any legally cognizable damages because he received all he had bargained for. She claims Axline purchased a property worth $335,000 for only $225,000. But the record indicates Axline purchased the property for $325,000, not $225,000. Although Reimund relies on Trial Exhibit 26, it is not in the record before us. "Where exhibits are missing we will not presume they would undermine the judgment." (*Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 291; see also *Hiser v. Bell Helicopter Textron Inc.* (2003) 111 Cal.App.4th 640, 657.) Contrary to her assertion on appeal that Axline paid less for the property because it was burdened by an easement, Reimund testified at the trial that the $325,000 sale price was not a reduced price.

The trial court did not err in concluding that Axline was fraudulently induced to agree to the nonexclusive easement.

IV

Reimund further contends that partial rescission was an improper remedy.

Fraud in the inducement creates a voidable, rather than void, contract. (*Village Northridge Homeowners Assn. v. State Farm Fire & Casualty Co.* (2010) 50 Cal.4th 913, 921 (*Village*); *Duick v. Toyota Motor Sales, U.S.A., Inc.* (2011) 198 Cal.App.4th 1316, 1320; see Civ. Code § 1568; *Filet Menu, Inc. v. C.C.L. & G., Inc.* (2000) 79 Cal.App.4th 852, 862 (*Filet Menu*); Rest.2d Contracts, § 164(1).) The aggrieved party may seek to (1) disaffirm or rescind the contract and recover the consideration parted with and damages resulting from the rescission, or (2) affirm the contract and recover damages for fraud. (Civ. Code, § 1689; *Wong v. Stoler* (2015) 237 Cal.App.4th 1375, 1384-1387 (*Wong*); *Sharabianlou v. Karp* (2010) 181 Cal.App.4th 1133, 1144-1145; *Filet Menu,*

10

at p. 862; *Pavlovich v. Neidhardt* (1954) 128 Cal.App.2d 559, 562 [stating that a plaintiff in an action based on a contract procured by fraud may repudiate or affirm the contract, but may not reform the contract]; see *Lane v. Davis* (1959) 172 Cal.App.2d 302, 307-308 [stating that reformation is not available for fraud in the inducement because there is no common intention between the parties that may be used as a standard to which the writing could be reformed].

A party seeking to disaffirm a voidable contract must seek to rescind it.  (*Village, supra,* 50 Cal.4th at p. 921.)  Rescission extinguishes the contract and returns the parties as nearly as possible to their positions before the contract.  (Civ. Code, § 1688; *Wong, supra*, 237 Cal.App.4th at p. 1386.)

"The general rule is that one must rescind all of his [or her] contract and may not retain rights under it which he [or she] deems desirable to have and repudiate the remainder of its provisions."  (*Simmons v. California Institute of Technology* (1949) 34 Cal.2d 264, 275 (*Simmons*); *Hayutin v. Weintraub* (1962) 207 Cal.App.2d 497, 509 (*Hayutin*).)  "The theory underlying such a rule is that retention of only the benefits of the transaction amounts to unjust enrichment and binds the parties to a contract which they did not contemplate."  (*Simmons*, at p. 275.)  The general rule does not apply where a contract is severable or divisible.  (*Id.* at pp. 275-276; *Howell v. Courtesy Chevrolet, Inc.* (1971) 16 Cal.App.3d 391, 403-405; *Filet Menu, supra,* 79 Cal.App.4th at p. 861.)

"Contracts are divisible or indivisible . . . according to the intention of the parties derived from the nature of the subject and the language used."  (*Ireland v. Craggs* (5th Cir. 1932) 56 F.2d 785, 787 [cited in *Simmons, supra*, 34 Cal.2d at page 275].)  A contract is divisible where the consideration is apportioned or where performance " 'is divided into two sets of partial performances, each part of each set being the agreed exchange for a corresponding part of the set of performances to be rendered by the other promisor.' "  (*Hayutin, supra*, 207 Cal.App.2d at p. 510; see Rest.2d Contracts, § 383.)  But " '[where] there is a showing that it was the intention of the parties to treat the

11

agreement as an entire contract, and where it appears that their engagements would not have been entered into except upon the clear understanding that the full object of the contract should be performed, the contract is not divisible [citations].' " (*IMO Development Corp. v. Dow Corning Corp.* (1982) 135 Cal.App.3d 451, 458-459.)

Reimund intended to reserve an easement when she listed the property and discussed that intent with her agent. Everyone agreed there was discussion about an easement at the February 27, 2012 meeting. Even if obtained through fraud, Addendum No. One expressly provided for a nonexclusive easement in favor of Reimund, and Axline and Reimund both signed Addendum No. One. There is no contention that consideration for the easement was apportioned or that performance relating to it was separable. Under the circumstances, the nonexclusive easement was an object of the contract and there is no indication the parties contemplated it would be severable from the remainder of the contract.

Axline cites *Persson v. Smart Inventions, Inc*. (2005) 125 Cal.App.4th 1141 (*Persson*) for the proposition that the trial court had equitable power to set aside the easement in Addendum No. One because Axline's consent was obtained fraudulently and the contract contained a severability provision. In *Persson*, the plaintiff and the defendant, who together cofounded a corporation that marketed household consumer products, negotiated an agreement to buy out the plaintiff's shares in the corporation. (*Id.* at pp. 1147-1149.) The defendant represented to the plaintiff that the corporation was in dire financial condition and did not disclose the development of a new product that would generate millions in revenue after the plaintiff signed the stock redemption agreement. (*Id.* at pp. 1148-1150.) The plaintiff affirmed the stock redemption agreement and sued the cofounder and the corporation for damages for fraud. (*Id.* at pp. 1149-1150, 1153.) The trial court set aside the mutual release provision of the stock redemption agreement based on fraud and awarded the plaintiff damages. (*Id.* at p. 1151.)

12

The appellate court rejected the cofounder's claims that the plaintiff could not avoid the release provision without rescinding the entire stock redemption agreement and that the trial court had no equitable power to void the release provision because such would amount to an impermissible partial rescission. (*Persson, supra,* 125 Cal.App.4th at p. 1153.) Citing *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, the appellate court said courts have the authority to set aside unconscionable or illegal contract provisions while enforcing the remainder of the contract and there was no reason the trial court would not have the same authority when a contract was procured by fraud. (*Persson,* at pp. 1153-1154.) However, *Armendariz* involved the severance of an unconscionable contract provision. (*Armendariz,* at pp. 121-127.) As discussed in *Armendariz,* Civil Code sections 1599 and 1670.5, subdivision (a) authorized severing the unconscionable or illegal clause from a contract and enforcing the remainder. (*Armendariz,* at pp. 121-122.) But no comparable statutory provision applies here, and no such contention is raised here.

In any event, *Persson* is distinguishable. The appellate court in *Persson* reasoned that setting aside the mutual release provision of the stock redemption agreement did not result in unjust enrichment or bind the parties to a contract they did not contemplate and the mutual releases were not among the essential objects of the contract. (*Persson, supra,* 125 Cal.App.4th at p. 1154 & fn. 3.) In contrast, substantial evidence in this case shows that the parties contemplated that an easement was an object of their contract.

Because the easement provision in Addendum No. One was not severable from the remainder of the parties' contract and it was not shown that it was impossible to restore the parties to their former positions, partial rescission was not a proper remedy for the fraud by Reimund. We will remand the matter for the trial court to fashion a proper remedy for the fraud. We note that where a defrauded party seeks to affirm the contract, Civil Code section 3343 provides the exclusive measure of damages for fraud in the

13

purchase of property, except in circumstances inapplicable here.  (*Alliance Mortgage Co., supra*, 10 Cal.4th at p. 1240; *Clar v. Board of Trade* (1958) 164 Cal.App.2d 636, 646.)

DISPOSITION

The portions of the judgment terminating the easement, ordering the amendment of the grant deed, and permitting the recording of the judgment in the Sacramento County Recorder's Office are reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.  The judgment is affirmed in all other respects. The parties shall bear their own costs on appeal.


                                        _____/S/_____
                                        MAURO, J.


We concur:


_____/S/_____
BLEASE, Acting P. J.


_____/S/_____
HULL, J.